## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BOBBY MILSAP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 14 C 4373** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner** | ) | **Magistrate Judge Susan E. Cox** |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Bobby Milsap ("Plaintiff") appeals the Commissioner of Social Security's decision to deny his Social Security disability benefits under Title II of the Social Security Act. We hereby construe plaintiff's memorandum in support of summary judgment [dkt. 16] as a motion. We grant plaintiff's motion and deny the Commissioner's motion for summary judgment [dkt. 20]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny his Social

Security disability benefits under Title II of the Social Security Act.[1] A motion for summary

judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of

Social Security ("Commissioner"). We will construe plaintiff's memorandum in support of

summary judgment of the Commissioner as a motion. For the reasons outlined below, we grant

plaintiff's motion and deny the Commissioner's motion. The Administrative Law Judge's

decision is reversed and remanded for further proceedings consistent with this opinion.

Plaintiff claims that he has been disabled since March 18, 2011, due to rheumatic heart

disease, status post mitral and tricuspid valve repair, and history of congestive heart failure

---

[1] *See* 42 U.S.C. §§ 404(g), 216(i), 223(d).

treated with anticoagulant therapy. [2]   Plaintiff applied for disability benefits on June 22, 2011.[3]

His application was denied by the Social Security Administration;[4] Plaintiff filed a request for a

hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 19, 2013,

in front of ALJ Percival Harmon. [5]

Following the hearing, the ALJ determined, *inter alia*, that: 1) the plaintiff has not

engaged in substantial gainful activity since March 18, 2011; [6] 2) the ALJ determined that

plaintiff's severe impairments include rheumatic heart disease, status post mitral and tricuspid

valve repair, and history of congestive heart failure treated with anticoagulant therapy; [7] 3)

Plaintiff's impairments do not meet, either individually or in combination, the severity

requirements of the listing in 20 CFR 404, Subpart P, Appendix 1; [8] 4) the Plaintiff has the

Residual Functional Capacity ("RFC") necessary to perform sedentary work as defined in 20

CFR 404.1520(d), 404.1525, and 404.1526 with additional stipulations including that he should

never climb ladders, ropes, or scaffolds, and should avoid exposure to extreme cold or heat,

humidity, hazards and open dangerous conditions, and fumes, odors, dusts, gases, or poor

ventilation; [9] 5) given the previously determined RFC the ALJ believes that the claimant is not

capable of performing his previous work, however it was determined that there are jobs in

significant number that the claimant can perform including dispatcher, assembler, bonder and

surveillance system monitor. [10]

The ALJ determined that the Plaintiff was unable to work during the period of March 18,

---

[2] R. at 40, 49, 50.
[3] R. 39.
[4] R. at 1.
[5] R. at 39.
[6] R. at 24, 40, 170.
[7] R. at 24, 368-369, 382, 517.
[8] R. at 25.
[9] R. at 70-71.
[10] R. at 71-75.

2011 to January 12, 2012.[11]  However, this span of time is less than the required period of 12

continuous months for a disability ruling.  To support this finding, the ALJ cites a medical result

from January 12, 2012, showed normal systolic function and an ejection fraction of 55%; both of

these results led Dr. Martin to conclude that the plaintiff had regained the ability to work as of

January 12, 2012.[12]  Dr. Martin's opinion was further supported by a normal cardiopulmonary

examination in March 2011,[13] and a New York Heart Association ("NYHA") functional

classification level of I, which means that there are no limitations on plaintiff's physical

activity.[14]  On September 12, 2012, the plaintiff had a cardiology output report which

demonstrated normal systolic function and an ejection fraction between 55% and 65%.  The

report also included an NYHA I rating by Dr. Russell F. Kelly.[15]  However, the outpatient

report, also generated on September 12, 2012, and performed by treating physician Dr. Bonnie

Thomas, noted an NYHA IV classification,[16] which indicates that all physical activity causes

distress for the patient.  These two different ratings from September 12 2012, give very different

opinions regarding the plaintiff's capabilities of performing any physical activity.  With one

doctor asserting that the plaintiff had no serious limitations and the other saying that the plaintiff

is incapable of all physical activity, it is unclear what the actual rating was for his visit on

September 12, 2012.

### DISCUSSION

I.       STANDARD OF REVIEW

---

[11] R. at 27.
[12] R. at 539.
[13] R. 410-411.
[14] R. 516-557.
[15] R. 519-520.
[16] R. at 480.

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[17] if it is supported by substantial evidence, and if it is free of legal error.[18] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[19] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[20] A "minimal[] articulat[ion] of her justification" is enough.[21]

## II.     THE RFC DETERMINATION WAS ERRONEOUS BECAUSE THE ALJ FAILED TO GIVE CONTROLLING WEIGHT TO THE TREATING PHYSICIAN'S TESTIMONY.

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. [22]  If an ALJ does not give the opinion controlling weight, she must evaluate six criteria in deciding how much weight to afford a medical opinion: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. [23]  An opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." [24]

---

[17] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[18] 42 U.S.C. § 405(g).
[19] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[20] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[21] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[22] 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).
[23] 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009).
[24] *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

During the September 12, 2012 examination Dr. Thomas, who was plaintiff's treating physician, ruled that the Plaintiff was NYHA class IV, which would preclude him from work. [25] During the ALJ's discussion regarding its RFC determination, the September 12, 2012 NYHA I classification was mentioned, but not the outpatient report from Dr. Thomas. [26] If the ALJ believed that Dr. Thomas' determination was erroneous or not credible it falls to the ALJ to justify his decision by following the previously outlined criteria. By failing to do so, the ALJ committed legal error.

Furthermore, the RFC determination is erroneous because the ALJ failed to acknowledge or address the NYHA IV determination that contradicted his findings. "While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." [27] Dr. Thomas' NYHA IV determination stands in contradiction to the ALJ's decision that the patient can perform sedentary work. This NYHA IV determination contradicts the NYHA I, determined by Dr. Russell F. Kelly, [28] cited by the ALJ to support his findings from the same visit. The ALJ must address evidence which contradicts his ruling, so he cannot simply adopt one of the NYHA I findings as correct without reconciling the NYHA IV finding. Because the conflicting NYHA determinations on September 12, 2012 were not addressed, the ALJ did not create a "logical bridge" between the medical records (*i.e.*, the NYHA IV classification on September 12, 2012) and his ability to perform under the specified restrictions (*i.e.*, the ALJ's assertion that the plaintiff was able to perform sedentary work as of January, 12, 2012). Failing to do so was legal error, and the ALJ's decision is reversed.

---

[25] R. at 480.
[26] R. at 28.
[27] *Godbey v. Apfel*, 238 F.3d 803, 808(7th Cir. 2000).
[28] R at 519.

## CONCLUSION

For the foregoing reasons, we remand this matter for further proceedings consistent

with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 16] and the

Commissioner's motion for summary judgment is hereby denied [dkt. 20].

**ENTER:**

**DATED:** <u>August 28, 2015</u>

Susan E. Cox
United States Magistrate Judge